IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Janero Mitchell,                               Case No. 4:17 CV 1724

                          Petitioner,          ORDER ADOPTING
              -vs-                             REPORT AND RECOMMENDATION

Warden Alan J. Lazaroff,                       JUDGE JACK ZOUHARY

                          Respondent.

**INTRODUCTION**

Petitioner Janero Mitchell, a prisoner at Mansfield Correctional Institution, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). He is serving a life sentence following a 2014 conviction in Ohio state court for aggravated murder (*id.* at 1). The Petition asserts that Mitchell's trial and direct appeal gave rise to two grounds for federal habeas relief: a violation of the Equal Protection Clause under *Batson v. Kentucky*, 476 U.S. 79 (1986), and a violation of the Confrontation Clause (Doc. 1 at 15, 17).

The Petition was referred to Magistrate Judge Jonathan Greenberg for a Report and Recommendation (R&R) under Local Civil Rule 72.2. Respondent Warden Alan Lazaroff filed a Return of Writ (Doc. 5); Mitchell responded with a Traverse (Doc. 7). The R&R (Doc. 8) recommends denying the Petition. Mitchell objects (Doc. 9).

## BACKGROUND

Mitchell accepts the R&R's recitation of the factual and procedural background (Doc. 8 at 1–8), which this Court incorporates by reference and summarizes below.

### *Batson* Challenge

Before Mitchell's trial, the court asked the prospective jurors whether any of their family members had ever been charged or arrested. *State v. Mitchell*, 2016-Ohio-1439, ¶ 15 (Ohio Ct. App. 2016). This question prompted no disclosure from prospective juror number seven, a black man with the last name of Whitfield. *Id.* Later, the State used a peremptory challenge on Whitfield. *Id.* At conference in chambers, defense counsel objected to this strike under *Batson*, asking the court to determine whether a race-neutral reason justified the peremptory strike. *Id.* The prosecutor responded as follows, *id.*:

> . . . Whitfield, his last name, we have prosecuted many Whitfields. He's from the south side as well. So even though he didn't indicate he had any family members that were prosecuted by us or who had convictions, I'm afraid that this Mr. Whitfield is related not only to Reginald Whitfield, who we just had a case with in Judge Durkin's court, but many of the other Whitfields who we have prosecuted. They are all from the south side.

Defense counsel argued that the State could have asked Whitfield about these suspected family relationships in voir dire and still could do so. After a brief exchange between counsel, the court allowed the strike, stating (Doc. 6-2 at 74):

> All right. Well, the court does find that the -- I'm going to allow the excuse of him. And the court does acknowledge that there are other blacks sitting in -- waiting in the back that are available. And Mr. Whitfield was not the only minority on this jury. So we will overrule that.

The empaneled, all-white jury found Mitchell guilty of aggravated murder (Doc. 1 at 15). *See also Mitchell*, 2016-Ohio-1439, ¶ 1.

On direct appeal, Mitchell made several *Batson*-related arguments, each of which the appellate court rejected. First, he argued that the trial court "considered impermissible factors" in its *Batson* determination because the court noted the presence of other minorities in the venire. *Id.* at ¶ 32. The appellate court ruled that "the mere acknowledgement of the composition of the present jury and venire would not constitute an error." *Id.*

Second, Mitchell argued the trial court erred in failing to make "the necessary *Batson* findings." *Id.* at ¶ 33. The appellate court ruled that the trial court's clear rejection of the *Batson* objection "was sufficient to express its ruling." *Id.* at ¶ 34.

Third, Mitchell argued that the trial court erred in not finding the purported race-neutral reason to be pretext. The appellate court ruled that the trial court did "not clearly err[] by believing the prosecution did not purposefully discriminate when it asked to excuse juror number 7." *Id.* at ¶ 43. The appellate court noted that the prosecutor's concerns did "not so lack plausibility that the trial court's decision should be rendered clearly erroneous." *Id.*

The Petition challenges these rulings in the first ground for relief, stating the Ohio Court of Appeals "unreasonably and contrarily applied *Batson* . . . when it ruled that Mr. Mitchell's right to equal protection was not violated by the exclusion of [prospective juror] Whitfield from his jury" (Doc. 1 at 15). The R&R recommends denying this ground for relief (Doc. 8 at 27).

**Confrontation Clause**

During the state's case-in-chief, the lead detective testified that, at the beginning of the investigation, he received a tip from the victim's relatives. *Mitchell*, 2016-Ohio-1439, ¶ 71. When the detective was about to reveal what the relatives said, defense counsel objected, and the court sustained. *Id.* The prosecutor then asked the detective, "[B]ased on those tips, who were you looking for?" (Doc. 8 at 28). Defense counsel again objected, the court overruled, and the witness responded,

3

"For an individual who went by the name of Smoke who drove a green SUV and lived in the neighborhood" (*id.*).

The tip's sources did not testify (Doc. 7 at 13), but several other witnesses did. The victim's girlfriend testified that Mitchell was her neighbor, his nickname was "Smoke," and he drove a green vehicle that she called an SUV. *Mitchell*, 2016-Ohio-1439, ¶ 70. An eyewitness identified Mitchell as the shooter. *Id.* at ¶ 91. She further stated she saw the shooter enter a green SUV or truck, and she identified Mitchell's green Chevy Avalanche as the type of vehicle she saw. *Id.* Another witness testified that, after hearing shots, she saw someone drive away from the victim in a large green truck. *Id.* Plus, the jury heard the victim's dying declaration to the responding officer that the shooter's vehicle was a green truck. *Id.* They further heard that, at the time of his arrest, Mitchell admitted he was the sole driver of the green Chevy Avalanche parked in his driveway. *Id.*

On direct appeal, Mitchell argued the trial court violated the Confrontation Clause by permitting the detective to testify that, based on a tip, he began looking for a person with the nickname Smoke who drove a green SUV and lived in the neighborhood. *Id.* at ¶ 72. The appellate court ruled that "any error in the admission of evidence contained in the tip was harmless beyond a reasonable doubt." *Id.* at ¶ 92. To reach this decision, the court "excise[d] the [allegedly] improper evidence and evaluate[d] the remaining evidence." *Id.* at ¶ 87 (citation omitted). The court observed that "the jury had already heard testimony on the[] subjects" described in the detective's answer. *Id.* at ¶ 90. In particular, the court noted that the girlfriend "disclosed the same information" as the tip, and therefore, the tip was "cumulative" of the girlfriend's testimony. *Id.*

The Petition's second ground for relief challenges the harmless-error ruling (Doc. 1 at 17). The R&R recommends denying this ground for relief (Doc. 8 at 27).

4

## DISCUSSION

This Court reviews *de novo* those portions of the R&R challenged in the Objection. *See* 28 U.S.C. § 636(b)(1); *Hill v. Duriron Co., Inc.*, 656 F.2d 1208, 1213 (6th Cir. 1981). Mitchell makes four objections (Doc. 9 at 1–9). He further asks for a certificate of appealability, if this Court does not find in his favor (*id.* at 9).

Although this Court's review of the objected-to portions is *de novo*, review is still confined by the federal habeas corpus statute. 28 U.S.C. § 2254(d) bars re-litigation of claims adjudicated on the merits in state court, with only two exceptions. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The first exception applies where the state-court decision "was contrary to, or involved an unreasonable application of," federal law then clearly established in Supreme Court holding. 28 U.S.C. § 2254(d)(1). *See also Williams v. Taylor*, 529 U.S. 362, 412 (2000) (stating this exception "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."). The second exception applies where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Mitchell seeks relief primarily under the first exception (Doc. 1 at 15, 17). Under the "'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 13. "[I]t is not an unreasonable application of clearly established Federal law for a state court to

5

decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted).

### *Batson* **Challenge**

Mitchell's first three objections challenge the R&R findings related to the trial court's application of *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson* establishes a three-step process for evaluating claims that a prosecutor's peremptory challenge violates the Equal Protection Clause. First, the defendant must show that the prosecutor exercised a peremptory challenge on the basis of race. *Id.* at 96–97. Second, the prosecutor must present a race-neutral explanation for striking the juror. *Id.* at 97–98. Third, the court must determine whether the defendant carried his burden of proving purposeful discrimination. *Id.* at 98. "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (internal quotation marks and citation omitted).

Mitchell objects to the R&R finding that the trial court completed the third *Batson* step (Doc. 9 at 1). He argues that the trial court "made no on-the-record findings related to the State's credibility" and that *Batson* requires these findings (*id.* at 4). For support, he cites the Second Circuit case of *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006), which states that the trial court must "make clear whether [it] credits the non-moving party's race-neutral explanation for striking the relevant panelist" (Doc. 9 at 2).

6

Mitchell's argument has several flaws. First, Mitchell points to no Supreme Court decision holding that the trial judge must state, on the record, reasons for or against the credibility of the proffered race-neutral reason. Second, even when this Court looks to the *Messiah* opinion that Mitchell cites, the opinion's next paragraph explains how a trial court can fulfill its obligation to "make clear" whether it credits the race-neutral reason: "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah*, 435 F.3d at 198. "Although reviewing courts might have preferred the trial court to provide express reasons for each credibility determination, no clearly established federal law required the trial court to do so." *Id.* (citation omitted). Given these statements by the Second Circuit, fairminded jurists can disagree on how much record a trial judge must make in the third step of a *Batson* challenge. The R&R correctly concluded that the state-court decision did "not violate any clearly established federal law" (Doc. 8 at 24).

Mitchell next objects to the R&R finding that he failed to prove that the prosecutor's purported race-neutral reason was pretextual (Doc. 9 at 4). Whether a given reason is pretextual "comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). "[I]t is the defendant's burden to rebut . . . the prosecutor's reasons for exercising his or her peremptory strikes on the record at the time such reasons are proffered." *United States v. Jackson*, 347 F.3d 598, 605 (6th Cir. 2003) (citation omitted).

As stated above, the trial judge here "express[ed] his *Batson* ruling on the credibility of [the] proffered race-neutral explanation in the form of a clear rejection . . . of [the] *Batson* challenge." *Messiah*, 435 F.3d at 198. This credibility determination is a finding of fact. *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). In a federal habeas proceeding, "a determination of a factual issue

7

made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Mitchell bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id. See also Lancaster*, 324 F.3d at 429.

Here, after the prosecutor gave a race-neutral reason -- that prospective juror Whitfield could be related to other Whitfields prosecuted by her office -- Mitchell's attorney stated only the following to rebut this reasoning (Doc. 6-2 at 72):

> And I'm of the belief they could have asked that in voir dire. That's not offensive to anyone. And it was not asked. And even if they wanted to ask it now, I would have no objection to that.

Beyond this statement and a suggestion that "none of the remaining black members of the venire would be empaneled, Mitchell's counsel did not provide any further argument as to why the prosecutor's reasoning was pretext" (Doc. 8 at 24). In his Objection, Mitchell cites a law review article that describes jurors' possible family relationships to those who have been criminally prosecuted as a "popular pretext" for striking minority jurors (Doc. 9 at 4–5 & n.2) (citing Sheri Lynn Johnson, *Race and Recalcitrance: The Miller-El Remands*, 5 Ohio St. J. Crim. L. 131, 158). But this article falls far short of the clear and convincing evidence required to render unreasonable the factual determination at issue here, particularly when defense counsel did not present the article to the trial judge at the time of the ruling. As the R&R correctly states, Mitchell did not provide clear and convincing evidence that the trial court's determination was unreasonable (Doc. 8 at 26).

Mitchell's final *Batson*-related objection argues that the state appellate court "invented third-step findings for the trial court" by overtly stating that the prosecution did not purposefully discriminate (Doc. 9 at 5) (*see* also Doc. 7 at 11). But, as stated above, the trial judge "express[ed] his *Batson* ruling on the credibility of [the] proffered race-neutral explanation in the form of a clear

rejection . . . of [the] *Batson* challenge." *Messiah*, 435 F.3d at 198. The state appellate court found that determination not clearly erroneous. *Mitchell*, 2016-Ohio-1439, ¶ 42.

As the appellate court observed, "Certainly, more thorough findings by the trial court in denying the defense *Batson* objections would have been helpful. However, the trial court is not compelled to make detailed factual findings to comply with *Batson*." *Id.* at ¶ 33 (citation omitted). "Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Rice*, 546 U.S. at 341–42. As the R&R correctly concludes, Mitchell failed to establish that the state-court decision on the *Batson* challenge was contrary to, or involved an unreasonable application of, clearly established federal law (Doc. 8 at 27).

**Confrontation Clause**

Mitchell next objects to the R&R finding that Detective Martin's testimony was cumulative of other evidence (Doc. 9 at 6). This finding was one factor in a multi-factor test courts use to review Confrontation Clause errors for harmlessness. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (discussing how the harmlessness inquiry "depends upon a host of factors," including "whether the testimony was cumulative").

But the Magistrate Judge was not the first to find the tip evidence cumulative. When the state appellate court conducted its harmless-error analysis, it too determined the evidence was cumulative. *Mitchell*, 2016-Ohio-1439, ¶ 90. It then determined that the admission of the evidence was harmless. *Id.* at ¶ 92.

When a harmless-error decision is subject to habeas review, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citation omitted). "[R]elief is proper only if the federal court

has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 2197–98 (internal quotation marks and citation omitted). Grave doubt requires "more than a 'reasonable possibility' that the error was harmful." *Id.* at 2198 (citation omitted).

Here, the combined testimony of the other witnesses -- particularly that of the victim's girlfriend -- provided the jury with the same facts as the tip evidence. Other evidence showed that a large green truck drove away from the victim's body, that "Smoke" was Mitchell's nickname, that Mitchell was upset with the victim before the murder, and that Mitchell drove a green SUV (Doc. 8 at 37). Further, an eyewitness saw Mitchell shoot the victim and leave the scene in a green SUV (*id.*). The tip evidence added little, if anything, to this other evidence. This Court does not have grave doubt of any substantial and injurious effect of the admission of the tip evidence. Thus, the state court's harmless-error determination was reasonable.

**Certificate of Appealability**

Mitchell requests a certificate of appealability (Doc. 9 at 8). To obtain a certificate, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. A certificate "does not require a showing that the appeal will succeed." *Id.* at 337. Rather, a petitioner must demonstrate only "that reasonable jurists would find the district court's assessment of the constitutional claims debatable." *Id.* at 338.

Mitchell does not meet this burden on his Confrontation Clause claim but does meet it on his *Batson* claim. The state appellate court noted, and this Court agrees, that "more thorough findings

10

by the trial court in denying the defense *Batson* objections would have been helpful." *Id.* at ¶ 33 (citation omitted). Although this Court concludes that no Supreme Court holding specifies the extent to which a trial court must make such a record, this Court acknowledges that reasonable jurists could debate that conclusion. Mitchell's claim, if nothing else, exposes a troublesome gap in *Batson* doctrine. The issue deserves encouragement to proceed further, and this Court therefore grants a certificate of appealability.

## CONCLUSION

This Court overrules Mitchell's Objections (Doc. 9) and adopts the R&R (Doc. 8) in its entirety. Accordingly, the Petition (Doc. 1) is dismissed. This Court grants a certificate of appealability on Mitchell's *Batson* claim and denies a certificate of appealability on his Confrontation Clause claim. 28 U.S.C. § 2253(c)(3).

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 13, 2019